UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARTHA FRAZIER SHERMAN,

    Plaintiff,                                                   CASE NO. 05-CV-10064-BC

v.                                                         DISTRICT JUDGE DAVID M. LAWSON
                                                             MAGISTRATE JUDGE CHARLES BINDER

EDWARD PAUL JONES, VIRGILA
FRAZIER MASON, HARPER COLLINS
PUBLISHERS, INC. and BARNES &
NOBLE BOOKSELLERS, INC.,

    Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
(Dkt. 22)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED.**

### II.    REPORT

#### A.    Introduction

By order of U.S. District Judge David M. Lawson, this case was referred to the undersigned Magistrate Judge for general case management on March 10, 2005. (Dkt. 4.) Pending is the above-entitled motion. Plaintiff responded opposing the motion and filed a document entitled "Request for Gross Revenue from The Known World," along with accompanying exhibits. (Dkt. 25). Defendants filed a reply (Dkt. 27), and Plaintiff filed a response (Dkt. 28). Upon review, I

conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

### B.      Facts and Procedural History

In 2003, Edward Paul Jones, an African-American author, then residing in the Washington, D.C. area, copyrighted and published his first novel entitled The Known World. The novel depicts an infrequently considered aspect of American history; the ownership of black slaves by black plantation owners in the antebellum south. The novel is set in Manchester, Virginia, approximately 20 years prior to the Civil War.

The novel quickly garnered critical acclaim, ultimately receiving the Pulitzer Prize for fiction, the National Book Critics Circle Award, the IMPAC International Award, the Southern Book Award, the Lannan Foundation Award, and the Macarthur Genius Award. (Dkt. 22, Ex. C.) The book was a finalist for three other awards (*id*.) and was glowingly reviewed in numerous publications. (*Id*., Ex. D.)

In 2000, a group known as the Frazier Historic Heritage Committee ("F.H.H.C.") copyrighted a work entitled The Elders Day Book. The Elders Day Book is a series of diaries discovered, compiled and lovingly cherished by the Frazier family whose members include the *pro se* Plaintiff. The Elders Day Book chronicles the Frazier family's ancestors' abduction from Africa in 1817 and their eventual settlement as slaves in Copiah County, Mississippi. The Elders Day Book follows the lives of the Frazier family's ancestors through 1911.

In late February 2005, one of the members of the Frazier family, Martha Lee Frazier Sherman, filed *pro se* the instant complaint. Approximately one week later, prior to an answer by any of the Defendants, Plaintiff filed *pro se* an Amended Complaint. (Dkt. 3.) This three-page handwritten complaint states that she is filing suit "because [Defendant Jones] stole my historic

copyrighted family history and used my family story to write a novel. . . . I personally told him that he could not use my historic family story." (Am. Compl., Dkt. 3.) Plaintiff alleges that Defendant Jones "tried to claim kinship to my family falsified his true identity." (*Id*. at 2.) Plaintiff seeks all profits gained from the sale of The Known World, an injunction against any further sales of the novel, $100,000,000.00 damages, a reimbursement of medical payments, a finding that Defendant Jones plagiarized Plaintiff's family history, along with a public apology from Defendant Jones. Plaintiff also seeks damages from another family member "for trying to steal my copyright from me, fraudly [sic] selling what she didn't own and helping [Defendant] Jones conceal his true identity." (*Id*. at 3.) Plaintiff also filed suit against Harper Collins Publishers and Barnes & Nobles Booksellers. (*Id*.) Defendants answered, denying liability and raising a series of affirmative defense. (Answer, Dkt. 13.)

Subsequent to a pretrial conference held in July, and pursuant to an Order for Further Proceedings (Dkt. 19), Plaintiff forwarded to Defendants a copy of The Elders Day Book, as well as a document all parties agreed to entitle "Final Analysis," showing the points of similarity between The Elders Day Book and The Known World.

The instant motion followed on September 15, 2005. Among the exhibits attached to the motion is an affidavit of Defendant Edward Jones. He states under oath that he has never "talked to or exchanged correspondence with" either the named Plaintiff, or Plaintiff's cousin, who is also mentioned in the complaint. (Jones Aff., Dkt. 22, Ex. E.) Defendant Jones states that he has never seen, heard of, or derived any information, language, ideas or scenes from The Elders Day Book. Mr. Jones denies that he has ever been in Memphis, Tennessee, or ever used the name Levi Frazier, Jr. Defendant Jones states that The Known World is an original work, "based on my own

3

imagination. I originally learned about the historical phenomenon of black slave owners when I was in college." (*Id*. at 2.)

In the motion, Defendants argue that Plaintiff has not met her burden of showing the similarity between these two works, necessary for a finding of copyright infringement. In response, Plaintiff argues vigorously that the copyright held by the F.H.H.C. on The Elders Day Book has in fact been violated, filing close to 100 pages of listings said to show the similarities between The Elders Day Book and The Known World. (Exs. Attach. to Pl.'s Request for Gross Revenue, Dkt. 25; Exs. Attach. to Pl.'s Resp., Dkt. 28.)

**C.     Analysis and Conclusions**

**1.     Governing Legal Standards**

**a.     Motion for Summary Judgment**

A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**b.     Copyright Infringement**

A copyright owner has the exclusive right to reproduce the copyrighted work, to prepare derivative works based upon the copyrighted work, and to distribute copies of the work. *See* 17 U.S.C. §§ 106(1), (3). "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." 17 U.S.C. § 501(a); *Sony Corp. v. Universal City Studios,*

5

*Inc.*, 464 U.S. 417, 423-433, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984). "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003). In most cases, a plaintiff may have no direct evidence of copying, and, in such cases, a plaintiff may establish an inference of copying by showing 1) access to the allegedly-infringed work by the defendant, and 2) a substantial similarity between the two works at issue. *Id.* at 853-54 (*quoting Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999)). "Access merely means an opportunity to view the protected material" or to copy plaintiff's work. *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir. 1988); *Murray Hill Pubs. v. Twentieth Century Fox*, 361 F.3d 312, 316 (6th Cir. 2004) (citations omitted). Access, however, cannot be inferred through "mere speculation or conjecture." *Id*. Neither may a finding of access rest on "mere assertion" or "bare possibility." *Id.; Raum v. Norwood*, 93 Fed. Appx. 693, 696 (6th Cir. 2004) (unpublished op.) ("[P]laintiffs must show 'significant, affirmative and probative evidence' of a chain of access to survive a summary judgment motion by the defendants.") (quoting *Tisi v. Patrick*, 97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000)).

As to the second element, "[t]o demonstrate substantial similarity, a Plaintiff need not prove mindless, slavish, or inartful copying. Rather, substantial similarity exists if, comparing the allegedly infringing work to the copyrighted work, 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Arthur Rutenberg Homes, Inc. v. Maloney*, 891 F. Supp. 1560, 1567 (M.D. Fla. 1995); *Kohus*, 328 F.3d at 855 (holding that substantial similarity does not require identity, and that it exists where the work is recognizable as having been taken from the copyrighted source). The question of substantial similarity can usually be decided on the basis of the works themselves and rarely, if ever, involves questions of

6

credibility. *Murray Hill*, 361 F.3d 312, 321 (6th Cir. 2004). Importantly, in this circuit, there must be a showing of substantial similarity between the works, irrespective of the access question. *See Wickham v. Knoxville Intern. Energy Exposition, Inc.*, 739 F.2d 1094, 1097-98 (6th Cir. 1984) ("The district court correctly concluded there exists no substantial similarity. Therefore, it became unnecessary to resolve the access issue. No amount of proof of access will suffice to show copying if there are no similarities.") (citations omitted).

However, even where a plaintiff cannot prove access, the copyright infringement claims can still succeed, but only by proof of a higher level of similarity than the merely substantial, it must be "strikingly similar":

> Such striking similarity "preclude[s] the possibility of independent creation." *Glanzmann*, [*v. King*],8 U.S.P.Q.2d [1594] at 1595 [(E.D.Mich.1988)] (citing *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111 (5th Cir.1978)). Of course, even in a striking similarity case, "[a]bsent copying, there can be no infringement." *Mazer v. Stein*, 347 U.S. 201, 218, 74 S. Ct. 460, 98 L. Ed. 630 (1954). However, striking similarity carries the burdens of proof that the infringing work is sufficient similar as to intrude into the copyrighted work's protection and that the defendant must have had access to the copyrighted work, even if the plaintiff can provide no extrinsic proof of that fact.

*Murray Hill*, 361 F.3d at 317.

"Striking similarity" comprehends a situation where the similarity is so great "that there is no plausible possibility of independent creation . . . ." *Trapani v. CBS Records, Inc.,* No. 87-6034, 1988 WL 92438, **3 (6th Cir. Sept. 2, 1988) (unpublished op.).

**c.    Discussion**

I note at the threshold that neither party contests the validity of the copyright asserted by the other. I will therefore turn to a consideration of the second element; namely, that of copying. On this issue, Plaintiff appears to be proceeding to prove copying by inference, by showing substantial similarity between <u>The Known World</u> and <u>The Elders Day Book</u>.

As pointed out above, the *sine qua non* for the successful proof of copying is substantial similarity. In support of her claim, Plaintiff forwarded to Defendants lengthy lists of individual words used in both publications and short phrases said by Plaintiff to be substantially identical in each publication. (Dkt. 22, Ex. F.) Plaintiff lists items shared by both works, such as:

> Almhouse, Army, Ax, Banjos, Bloodhounds, Bumble Bees, Buttermilk, Calves, Candles, Chests, Chickens, Colors, Communities, Companies, Cornfields, Crickets, Crops, Daylight, Deaths, Deer, Deserts, Dinner, Eggs, Elephants, Emblems, Evenings, Families, Firewood, Fish, Flags, Flares, Floods, Gardens, Garments, Gates, Giraffes, Groans, Grounds, Grownups, Hammers, Handles, Harbors, Hatch, Hawks, Hills, Hoes, Horses, Indians, Ivy, Jack-o-Lanterns, Kitten, Knives, Laces, Ladders, Lard, Lemonade, Loaves, Locks, Maids, Medicines, Members, Ministers, Moss, Muffins, Mules, Necklaces, Nightgowns, Oasis, Objects, Officers, Oil, Oranges, Paint, Palaces, Pancakes, Passengers, Pastures, Peanuts, Peanut Butter, Pebbles, Peninsula, Photograph, Plates, Playgrounds, Plums, Pockets, Prisons, Prizes, Quail, Quarrel, Radishes, Roofs, Rubbers, Ruffles, Rugs, Rye, Sailcloth, School, Scooter, Scrapbook, Screwdriver, Seashore, Sheriff, Settlements, Shingles, Skeletons, Sleeves, Stockings, Squashes, Staircase, Statues, Stones, Strap, Stumps, Sugar, String Beans, Sweaters, Sweet Potatoes, Turkeys, Turnips, Walnuts, Wasps, Woodpeckers, Wreaths, Yardstick.

(Defs.' Mot., Dkt. 22, Ex. F.)

Plaintiff also supports her claim of substantial similarity with a lengthy list of comparisons between The Known World and The Elders Day Book. Illustrative examples include the following:

| **THE KNOWN WORLD** | **THE ELDERS DAY BOOK** |
|---|---|
| You free or slave (page 81) | The captain asked me was I a free man (page 118) |
| All was quiet (page 59) | Everybody was silent (pages 116) |
| On Sundays a free man came over and held church services for the slaves (pages 82 & 83) | On Sundays we gather at the church cabin we have prayer gathering (page 96) |
| One of his slaves had fun away (page 93) | Nathan ran away with big Josephine (page 72) |

| | |
|---|---|
| Elias said to Master he be liking Celeste (page 101) | I walked beside Master Dale I told him that Vinna was my broom stick gal (page 75) |
| Lord have mercy he said Lord forgive her (page 191) | Lord forgive his many sins (page 114) |
| That Sunday Stamford went to Cassandra to beg her once again to be his woman (page 190) | I want her as my gal I better ask her to be me gal now.  I stole to her cabin last night (page 72) |
| He stole flowers from Caldonia's garden (page 191) | Vinna and I picked sunflowers from the flower garden (page 93) |
| The dream went to pieces soon as he sat up on his pallet[.]  What came into his head was the thought of his mother and father  (page 191) | When I get in bed and close my eyes at night visions of my people gather all around me (page 16) |
| He would shrivel up and die alone in slavery (page 191) | I shall live out my days wisely serving as a slave (page 11) |
| He called out to them there in the dark and received no answer (page 191) | I screamed wake up my loved ones didn't awake (page 43) |
| Maybe he had not ever been born (page 192) | To this day I am sorry God kept me alive (page 48) |
| All God's children have names (page 192) | I felt lost with no name (page 48) |
| Just appeared one day as a little boy and someone seeing him alone and naked in some lane had taken pity on him and given him a home (page 192) | I, Kahamm Kambovee the youngest son (page 10) |
| You always struck me as a man who wanted the job all to himself (page 282) | She called me an old smart nigger that wanted to own a big plantation and the big house[.]  She said that I was unworthy to own a mule but was trying to get ownership of all the land, fowls, horses, cows, cats and dogs (page 122) |
| Family is good for that[.]  Good for backing you up.  (page 282) | Families were always supporting families[.]  They had strong family values (page 6) |

| | |
|---|---|
| I'll do whatever I can  (page 282) | I will record whatever I can whenever I have the chance  (page 282) |
| We all wanna go home  (page 284) | We sat wondering and praying for our tribual [sic] families in the Kambovee Valley  (page 58) |

(Defs.' Mot., Dkt. 22, Ex. G; Unnumbered Exs. Attach. to Pl.'s Resp., Dkt. 28.)

Under the standards set forth above, and after the review of the submissions made by both parties, particularly the comparisons proffered by Plaintiff, I suggest that she has failed to meet her burden of establishing a genuine issue of disputed material fact under any of the standards set forth above. I first conclude that The Known World and The Elders Day Book are in no way "strikingly similar." Nor are they "substantially similar." They are instead, I suggest, substantially dissimilar in their use of language, diction, setting, format and thematic development. In spite of her diligent efforts, Plaintiff's lengthy lists show little more than that both works were written in the English language and deal with slavery in the southern United States. Plaintiff's extensive listing of shared words and fragmentary phrases are little more than common nouns and what the law recognizes as *scenes a faire*, which "'. . . follow naturally from the work's theme, rather than from the author's creativity.'" (citation omitted) *Kohus*, 328 F.3d at 856.

Plaintiff's citation to *Alexander v. Haley*, 460 F. Supp. 40 (S.D.N.Y. 1978) is apt. In that case, plaintiff filed a copyright infringement action against the author, Alex Haley, alleging that his famous book, Roots, infringed upon the copyright held by the plaintiff for a novel entitled Jubilee that he copyrighted in 1966 and a pamphlet he copyrighted in 1972. As in the instant case, both Roots and Jubilee were "amalgams of fact and fiction derived from the sombre history of black slavery in the United States." *Id*. at 42. As in the instant case, "differences in scope are, however, more striking than the similarities." *Id*. As in the instant case, the court in *Alexander*

10

concluded that none of the numerous similarities suggested by the plaintiff actually supported a claim of infringement. *Id*. at 44. In a conclusion which I suggest could also be made in the instant case, the court stated: "The court agrees with defendants; each of the similarities asserted by the plaintiff is in one or more of several categories of attributes of written work which are not subject to the protection of the copyright laws." *Id*. Citing a long series of cases, the court stated, "[w]ords and metaphors are not subject to copyright protection; nor are phrases and expressions conveying an idea that can only be, or is typically, expressed in a limited number of stereotyped fashions." *Id*. at 46. The court concluded: "Plaintiff collides with these principles over and over again as she extracts widely scattered passages from her book and pamphlet, and juxtaposes them against similarly scattered portions of Haley's Roots only to demonstrate the use by both authors of obvious terms to describe expectable scenes." *Id*. (footnotes omitted).

I suggest that these conclusions apply equally to the instant case, and guided by the precedents cited above, I conclude that Plaintiff has failed to meet her burden on the issue of similarity, and that therefore, consideration of the issue of access is unnecessary. For these same reasons, I suggest that the grant of summary judgment in favor of Defendants is appropriate.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the

objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                            s/ *Charles E Binder*
                                                 CHARLES E. BINDER
Dated: January 25, 2006                 United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Douglas A. Dozeman, and served in the traditional manner on Janet L. Ramsey, Martha Lee Frazier Sherman and Honorable David M. Lawson.

Dated:  January 25, 2006                       By     s/Mary E. Dobbick
                                                                              Secretary to Magistrate Judge Binder